UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DAVID WILSON,

               Plaintiff,                    Case No. 1:17-cv-361

v.                                          Honorable Paul L. Maloney

SHIRLEE HARRY et al.,

               Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**<u>Factual Allegations</u>**

Plaintiff David Wilson is presently incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Michigan. Plaintiff sues several MDOC official and employees from LRF: Warden Shirlee Harry, Business Manager Unknown Groenhof, General Office Assistant Unknown Dietz, Resident Unit Manager Unknown Cummings, and Assistant Resident Unit Manager Unknown Irby.

Plaintiff's complaint centers on the rejection of mail he received on June 14, 2016. Plaintiff alleges that on that date he received three separate letters containing a number of photographs. The mailroom personnel combined the photos from the three letters and issued a notice to Plaintiff that the photographs were being rejected because the photos were simply too numerous to permit effective shakedown of their content. The rejection notice was signed by Defendant Dietz.

On July 8, 2016, J. Minich conducted a hearing regarding the mail rejection. Minich determined that the photos themselves, with the exception of four photos, did not violate policy. Accordingly, Plaintiff anticipated receiving all but the four photos. According to Plaintiff, that did not occur because Defendant Cummings disagreed with the result of the hearing and ordered a new hearing.

On July 27, 2016, Plaintiff was given a second hearing. The result was the same. The photos themselves did not violate policy. Following this result, Defendant Groenhof ordered that the photos be withheld from Plaintiff. Defendant Cummings ordered yet another hearing.

On August 17, 2016, Defendant Irby conducted the third hearing. Defendant Irby concluded that the prior hearings had failed to comply with MDOC policy regarding voluminous mail and that it was the volume of the photographs that Plaintiff received, not the content that was

at issue. Defendant Irby found that Plaintiff should not receive the photographs. Plaintiff states that he was able to view the photographs at the hearings and that the content of the photos was in no way objectionable.

Plaintiff pursued a grievance regarding the rejection of the photographs. He claims that Defendant Cummings reviewed the grievance with Plaintiff at the first step. Plaintiff contends that Cummings should not have reviewed a grievance in which she was so deeply involved. Defendant Harry denied Plaintiff's grievance at the second step claiming the grievance was untimely. At the third step, the MDOC informed Plaintiff that there was nothing left to resolve because, according to information from LRF, Plaintiff had received the mail to which he was entitled. Plaintiff claims that Defendants (he does not identify which Defendant) misinformed the MDOC that numerous pictures were in violation of policy because they showed nudity.

On March 13, 2017, Defendant Dietz informed Plaintiff that the pictures would be disposed of if Plaintiff did not mail them back.

Plaintiff contends that Defendants violated his First and Fourteenth Amendment rights. He seeks a declaration to that effect. He seeks an injunction against such violations and an order that Defendants' employment terminate if they violate the injunction and their conduct is determined to be malicious. Plaintiff seeks compensatory damages of $2.00 for each photograph rejected and punitive damages of $25,000.00 from each Defendant.

## Discussion

### I.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

- 4 -

Here, Plaintiff contends that Defendants have violated his First Amendment rights by preventing him from receiving his incoming mail and his Fourteenth Amendment right to due process by virtue of procedural irregularities in the administrative hearings regarding the rejection and the resolution of his grievance.

II.     First Amendment

"A prison inmate maintains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Johnson v. California*, 543 U.S. 499, 510 (2005). Thus, the First Amendment protects a prisoner's receipt of incoming mail, subject to limitation by legitimate penological interests. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). The Supreme Court has held that prison regulations (similar to those in Michigan) allowing a warden to reject any publication for good reason pursuant to specific criteria did not violate the First Amendment because the regulations were reasonably related to legitimate penological interests. *Thornburgh v. Abbot*, 490 U.S. 401, 413 (1989). In *Thornburgh*, the regulations contained a non-exhaustive list of criteria to support the rejection of a publication. Emphasizing the extreme deference accorded to prison officials, the Supreme Court stated:

> We deal here with incoming publications, material requested by an individual inmate but targeted to a general audience. Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct. Furthermore, prisoners may observe particular material in the possession of a fellow prisoner, draw inferences about their fellow's beliefs, sexual orientation, or gang affiliations from that material, and cause disorder by acting accordingly. As the Deputy Solicitor General noted at oral argument: "The problem is not . . . in the individual reading the material in most cases. The problem is in the material getting into the prison." In the volatile prison environment, it is

essential that prison officials be given broad discretion to prevent such disorder.

*Thornburg*, 490 U.S. at 412-13 (citations omitted). The Court applied four factors relevant to the inquiry whether the restriction is reasonably related to legitimate penological interests: (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest which it allegedly furthers, (2) whether there are alternative means by which the inmate may exercise the right impinged, (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally, and (4) the existence or absence of ready alternatives to the regulation in question. *Turner v. Safley*, 482 U.S. 78, 88-91 (1987) (cited in *Thornburgh*, 490 U.S. at 414-18).

In this instance, Plaintiff identifies the penological interest that motivated the rejection of his photographs. According to Plaintiff, his photographs were rejected because there were so many of them. The volume precluded an adequate examination of the photographs to determine whether or not they were contraband. This Court has previously recognized the legitimacy of the penological interest that is furthered by a rule limiting the volume of incoming mailings. In *Young v. Weathersby*, No. 1:09-cv-67, 2010 WL 3909463 (W.D. Mich. Sep. 15, 2010) *report and recommendation adopted,* 2010 WL 3909453 (Sept. 30, 2010), MDOC personnel rejected a 48-page mailing because it was so voluminous that it could not be readily reviewed for contraband or other threats. *Id.* at *8. The Court stated:

There is a valid rational connection between the prison regulation . . . and the legitimate governmental interests put forward to justify it. Plaintiff retains the ability to receive other correspondence. Accommodation of the right plaintiff claims would effectively destroy the State's ability to keep harmful material out of the prison. Prisoners could simply hide harmful content within a sufficiently large quantity of other papers to thwart detection. There are no ready alternatives available that fully

accommodate the right plaintiff claims at a *de minimis* cost to valid penological objectives.

*Id.* This Court reached the same conclusion in *Hurick v. Berghuis*, No. 1:13-cv-61, 2014 WL 1256000 at *11 (W.D. Mich. Mar. 26, 2014) ("[T]he contents of the envelope, a two-inch stack of paper, was too voluminous to be searched by mailroom staff. . . . The MDOC has a legitimate interest in ensuring that incoming mail is fully searched before it is released to a prisoner.") (footnote and citations omitted).[1]

Accepting Plaintiff's allegations as true, consideration of the four *Turner* factors puts an end to his First Amendment claim. There is a valid rational connection between the rule limiting the volume of incoming mail and the legitimate governmental interests which it furthers: preserving the safety of the institution from contraband and the resources of the prison expended to ensure that safety. Plaintiff has alternative means by which he might receive photographs. He can receive them over the course of fewer mailings spread over time. Courts have routinely recognized that the accommodation of the inmate's right to receive any volume of mail would increase the danger of contraband entering the prison and, thus, would jeopardize the safety of guards and other inmates. Or, alternatively, effective screening of voluminous mailings would consume an inordinate amount of prison resources. Because volume dictates risk and demands resources, there appears to be no

---

[1]See also *Hall v. Johnson*, 224 F. Supp. 2d 1058, 1060 (E.D.Va. 2002) (upholding policy where all general purpose correspondence over one ounce in weight was rejected because it allowed mail room personnel to quickly scan a shorter document for potential security risks, such as escape plans); *Harksen v. Braxton*, No. 7:04-cv-00243, 2004 WL 5645580 at *3 (W.D. Va. Nov. 9, 2004) (court upheld rule that correspondence might not exceed one ounce or five pages "so that prison staff are not overwhelmed with voluminous correspondences. The rule does not limit the amount of mail a prisoner receives, it merely optimizes screening procedures."); *McKenzie v. Fabian*, No. 07-4441, 2009 WL 2982641 at *10 (D. Minn. Sep. 11, 2009) (court upheld weight limit on incoming mail because the policy "is rationally related to its objective of preventing contraband from entering the prison and taking into account the finite resources of the prison.").

ready alternative to the volume regulation in question.[2]  Accordingly, Plaintiff's receipt of

voluminous mailings containing numerous pictures is not protected by the First Amendment because

it would be inconsistent with the legitimate penological objectives of the MDOC.  Plaintiff has,

therefore, failed to state a claim for violation of his First Amendment rights.

### III.    Fourteenth Amendment

Plaintiff contends that Defendants violated his Fourteenth Amendment right to due

process when they upheld the rejection of the photographs in the third administrative hearing.

Plaintiff also contends that Defendants violated his Fourteenth Amendment right to due process by

its mishandling of his grievances.  Each claim is considered below.

### A.    Due process in the mail rejection hearing

The elements of a procedural due process claim are: (1) a life, liberty, or property

interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3)

without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

"Without a protected liberty or property interest, there can be no federal procedural due process

claim."  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of

Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).  The Sixth Circuit has held that a

prisoner "has a liberty interest in receiving his mail."  *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir.

2010) (citing *Procunier*, 416 U.S. at 428, overruled on other grounds by *Thornburgh*, 490 U.S. at

_____

[2]Plaintiff does not identify precisely how many photographs were included in the three mailings.  He only notes
that the combined photographs violated the rule limiting mailings to one-half inch in thickness.  (Compl., ECF No.1,
PageID.3.)  It may be that this Court might draw the line at some other point, but the Sixth Circuit has cautioned against
that sort of micro-management: "The Supreme Court has often reminded that courts are ill-suited to the inordinately
difficult task of running a prison, and in general, should defer to the expert judgment of prison officials."  *Sheets v.
Moore*, 97 F.3d 164, 169 (6th Cir.1996) (citing *Thornburgh*, 490 U.S. at 409; *Turner*, 482 U.S. at 84-85; *Jones v. North
Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977); and *Procunier v. Martinez*, 416 U.S. 396, 405
(1974)).

401 ("[t]he interests of prisoners and their correspondents in uncensored communications by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest . . . .")).

The crux of Plaintiff's due process challenge is that Defendants failed to follow MDOC policies in procedures when they rejected his mail.  (Compl., ECF No. 1, PageID.5) ("[D]efendant[s] did not perform in accordance with certain explicitly mandatory language of the regulations . . . .").  This due process claim merits little discussion.  A claim under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law.  *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).  Plaintiff does not enjoy any federally protected liberty or property interest in state procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994).

Moreover, no matter what deficiencies might exist under state law or rule, it is clear that Plaintiff received due process of law.  In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law.  This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false.  The Due Process Clause does not guarantee that the procedure will produce a correct decision.  "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process."  *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980).  "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."  *Zinermon*

*v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Here, Plaintiff does not allege that he was denied notice or an opportunity to be heard. Accordingly, he has failed to state a claim for violation of his due process rights in connection with the mail rejection hearing.

    B.  <u>Due process violations in the handling of Plaintiff's grievance</u>

    Plaintiff's due process claim relating to the handling of his grievance fails at the first step of the analysis. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Plaintiff has failed to state a claim that Defendants' conduct in handling Plaintiff's grievance deprived him of due process.

## Conclusion

    Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: May 2, 2017                          /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            United States District Judge